**Francis RAINEY, Jr., Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Appellee.**

**No. 84–2339.**

United States Court of Appeals, Fourth Circuit.

Argued June 6, 1985.

Decided Aug. 21, 1985.

Mary J. Wiesen-Kosinski, Aiken, S.C., for appellant.

Henry M. Herlong, Jr., Asst. U.S. Atty., Edgefield, S.C. (Henry Dargan McMaster, U.S. Atty., Columbia, S.C., on brief), for appellee.

Before RUSSELL and HALL, Circuit Judges, and HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

Francis Rainey, Jr., appeals from an order of the district court affirming denial of his claims for disability insurance benefits and Supplemental Security Income ("SSI") benefits by the Secretary of Health and Human Services ("Secretary"). This denial was based upon the administrative law judge's ("ALJ's") determination that Rainey is not disabled within the meaning of the Social Security Act. The district court found that the ALJ's decision was supported by substantial evidence. We disagree and conclude that the record clearly supports a finding that Rainey is disabled. Therefore, the decision of the district court is reversed and the case remanded to the district court for entry of an order directing the Secretary to award claimant the applicable disability benefits.

I.

Rainey was thirty-seven years old at the time of the administrative hearing on June 23, 1983,[1] and has a ninth-grade education.

---

**1.** Rainey filed his application for disability ben-    efits and SSI in June, 1978. He alleged disabili-

He has worked as a repairman, janitor, collection agent, security guard, and truck driver. At the time of his 1983 hearing, he was serving a sentence in a corrections center. According to Rainey, he has not worked full time since April, 1978, when he was injured in a work-related accident in which the truck he was driving overturned.

At the 1983 administrative hearing on his claim, Rainey testified that he has difficulty writing and can read and understand only simple words. He stated that he has experienced severe headaches and back, leg, and neck pain since his April, 1978, accident. Claimant testified that he suffered a prostate injury in the accident which necessitated the removal of twenty percent of his prostate and surrounding tissue. He stated that as a result of that injury, he has urination and bowel difficulty and can stay in an automobile for only thirty minutes at a time. Claimant said that after that time he needs to walk around for fifteen minutes. Rainey said that he can stand for only thirty-five to forty minutes at one time. He stated that he cannot bend, stoop, or squat, and that he has trouble sleeping at night. According to Rainey, his back problems force him to lie down several times every day to relieve his pain.

Claimant further testified that he experiences dizziness and numbness in his hands. He stated that he has problems with depression. Rainey said that he had been taking pain pills for his back in 1978, but that he no longer takes them because he is taking medicine for hypertension.

Rainey's mother, daughter, and godmother testified at his 1983 hearing. Their testimony corroborated claimant's testimony regarding his medical problems.

Medical evidence of record shows that Rainey sustained a fracture of the lumbar spine in 1969. Thereafter, a lumbar fusion was performed.

Following his April, 1978, accident, claimant was admitted to the hospital and treated by J.G. Jackson, M.D., an orthopedic surgeon, for a cervical and lumbar sprain. After his release, he continued to complain of back pain. In June, 1978, paraspinal spasms were noted in the cervical region.

Claimant was seen by John D. Reynolds, M.D., a board certified neurosurgeon, on July 13, 1978, for complaints of low back pain and generalized headache. Dr. Reynolds reported no neurological impairment, but he recommended surgical treatment and use of a low back brace.

Rainey was re-examined by Dr. Jackson on August 7, 1978. An X-ray examination of the fusion site in Rainey's back was performed. Dr. Jackson reported that claimant suffers from a thirty percent impairment of the lumbar spine due to the spinal fusion.

On October 2, 1978, Rainey was seen by Luther C. Martin, M.D., a board certified neurologist. Dr. Martin noted a fifteen percent permanent impairment of the cervical spine, a thirty-five percent impairment of the lumbar spine, and a ten percent impairment of the left leg. He concluded that Rainey is unable to carry out any type of active work involving manual labor.

Dr. Charles Jackson, a licensed psychologist, saw Rainey on December 8, 1978. Dr. Jackson administered the Wechsler Adult Intelligence Scale ("WAIS") and four achievement tests. On the WAIS, Rainey scored a verbal intelligence quotient ("IQ") of sixty-five, a performance IQ of seventy-six, and a full scale IQ of sixty-eight. Dr. Jackson reported that claimant functions within the dull to normal range of intelligence, with basic illiteracy. He noted that Rainey can write his name and simple words and can perform simple arithmetic. Dr. Jackson diagnosed no psychotic symptoms. He noted that claimant tends to have somatic complaints and that Rainey

ty due to back and leg trouble. Following a hearing held in May, 1979, Rainey's application was denied by the Secretary. Upon review by the district court, the case was remanded to the Secretary for evaluation of additional medical evidence and for further findings with respect to whether claimant was able to perform his past work and, if not, whether he retained the capacity to perform other work.

has poor insight into his situation. Dr. Jackson concluded that Rainey "does not have the mental ability or achievement skills to pursue training in a trained occupation or a professional occupation."

On May 21, 1979, claimant was admitted to the hospital for a myelogram.[2] The treating physician, Dr. Myron Collins, diagnosed pseudoarthrosis of the lumbar spine and spinal stenosis.[3]

Additional medical evidence includes a record of Rainey's hospitalization in January, 1983, for complaints of chest pain, shortness of breath and profuse perspiration. It was subsequently confirmed that he had not suffered a heart attack.

Claimant was re-admitted to the hospital in February, 1983, for follow-up care. Upon Rainey's discharge, the doctor diagnosed essential hypertension, hypertensive cardiovascular disease, and chest discomfort of an unknown etiology. The record shows that he takes anti-depressant and hypertension medication.

Darrell T. Johnson, a vocational counselor, testified as a vocational expert ("VE") at claimant's 1983 hearing. In response to a hypothetical posed by the ALJ, he stated that a man claimant's age who, due to a back injury, could not perform any work which would require prolonged standing, bending, or stooping and would have to be able to alternately sit and stand, could not perform claimant's past work. The VE testified that such a person would be restricted to sedentary work which would permit sitting or standing at will. He further stated that such jobs would include assembly line production, machine operations, and inspection work which required lifting of no more than ten pounds and that thousands of such jobs exist in the state in which Rainey lives.

The ALJ found that claimant suffers from a severe back impairment and hypertension, that Rainey's subjective complaints are credible, and that Rainey is unable to perform his past relevant work. Although the ALJ found that claimant is unable to perform a full range of sedentary work, he determined that there are sedentary jobs in the national economy which Rainey can perform. Based upon this finding, the ALJ concluded that Rainey is not disabled. The Appeals Council adopted the ALJ's findings and denied claimant benefits. The district court affirmed the Secretary's denial of benefits, and Rainey appeals.

## II.

On appeal, Rainey contends that the record establishes that he is disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 C, by reason of his low IQ and back impairment. We agree and hold that the Secretary's denial of eligibility is not supported by substantial evidence.[4]

In denying benefits to Rainey, neither the ALJ nor the Appeals Council considered whether claimant was disabled due to a mental impairment. Under the listing of mental impairments, an "IQ of 60 to 69, inclusive [as measured by a well-standardized intelligence test such as the WAIS] and a physical or other mental impairment imposing additional and significant work-related limitation of function" constitute disabling mental retardation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 C; *see* 20 C.F.R. § 404.1525. Section 12.00 B 4 provides, in pertinent part, that "[w]here more than one IQ is customarily derived from the test administered, i.e., where Verbal, Performance and Full Scale IQ's are provided as on the WAIS, the lowest of these

---

**2.** A myelogram is a film of the spinal cord. *Dorland's Illustrated Medical Dictionary* 1008 (25th ed. 1974).

**3.** Spinal stenosis is a narrowing or stricture of the spine. *Dorland's Illustrated Dictionary* 1470 (25th ed. 1974).

**4.** Rainey also alleges that the Secretary used the VE testimony inappropriately; that she failed to

properly consider his complaints of pain and the effect of his combination of impairments; and that the Secretary's determination that he has the residual functional capacity to perform sedentary work is not supported by substantial evidence. These claims need not be addressed, as our decision with respect to Rainey's mental impairment is dispositive.

is to be used in conjunction with § 12.05."
20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00
B 4.

Rainey's lowest score on the WAIS was a
verbal IQ of sixty-five, which falls well
within the sixty to sixty-nine range provid-
ed in § 12.05 C. Moreover, the uncontro-
verted medical evidence supports Rainey's
claim that his back impairment imposes an
"additional and significant work-related
limitation of function." 20 C.F.R. Pt. 404,
Subpt. P, App. 1, § 12.05 C. In fact, the
ALJ specifically found that Rainey could
not perform his past work. This finding
alone establishes the existence of an addi-
tional and significant work-related limita-
tion of function within the meaning of
§ 12.05 C. Therefore, we conclude that the
Secretary's decision cannot stand.

### III.

Accordingly, the judgment of the district
court is reversed, and the case is remanded
to the district court for entry of an order
directing the Secretary to award the appli-
cable disability benefits to Rainey.

REVERSED AND REMANDED.