**Brannon W. TURNER,
Plaintiff–Appellant,**

v.

**Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant–Appellee.**

No. 85–2142.

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1988.

Decided Sept. 16, 1988.

George Lawrence Fitzgerald, Charlotte, N.C., for plaintiff-appellant.

Clifford Carson Marshall, Jr., Asst. U.S. Atty. (Thomas J. Ashcraft, U.S. Atty., Asheville, N.C., on brief), for defendant-appellee.

Before WINTER, Chief Judge, and SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Brannon W. Turner appeals from the district court's judgment affirming the deci-

sion of the Secretary of Health and Human Services awarding him Social Security disability benefits [1] from January 1, 1984, but continuing to deny him benefits from the date of his amended application on March 1, 1979 through December 31, 1983. We affirm that portion of the district court's decision which approved the award from January 1984 but reverse and remand the denial of benefits from March 1979 to December 1983.

Since 1976 Turner has suffered from arthritis, hiatal hernia, prostate gland problems, elbow tendonitis, and broken cartilage in his arms and legs. He has not worked since 1979, a result of osteoarthritis of the neck, elbow, hands, and knees, and chronic tendonitis, with the pain and swelling shifting periodically from one location to another. During the period 1976–1981 he was continually treated by several doctors and hospitals with surgeries, drugs, injections, and immobilization in casts. By 1981 his afflictions had led to reactive depression and by 1982 he was significantly depressed and needed psychiatric treatment. By 1982 he sat in a dejected position and stood in a bizarre fashion. He reported having sexual relations infrequently because of painful erection and ejaculation. By 1987 he had severe clinical depression manifested by such vegetative signs as insomnia, fatigue, loss of motivation, decreased appetite, loss of interest in sexual activity, and preoccupation with somatic concerns. He quit school at age sixteen. He cannot read or write,[2] having been socially promoted through the tenth grade.

This case has stumbled along a path through administrative and judicial tribunals, which has been too long and too winding. Turner, by an amended application, originally requested disability benefits from March 1, 1979. Successive determinations by administrative law judges and the Appeals Council have consistently found Turner to suffer from severe medical and emotional impairments but the Appeals Council has, with equal consistency, found that while he was unable to return to his usual work, he was able between 1979 and 1984 to perform light work.

After Turner's 1979 application, an Administrative Law Judge (ALJ), in February 1981, found he could perform light work and found him not disabled under the guidelines then in effect. After the Appeals Council's denial of review, Turner filed suit in the district court, which remanded the case to the Secretary under the provisions of 42 U.S.C. § 405(g) for the purpose of obtaining additional medical evidence. The Appeals Council, in turn, remanded it to the ALJ with instructions, among other things, to evaluate Turner's pain and his residual functional capacity in view of his combined impairments. On remand, the ALJ considered the psychological and physical impairment as well as that produced by pain and found that due to combined muscular-skeletal problems and pain, he had been disabled since March 1, 1979. The Appeals Council rejected the ALJ's findings and in a brief opinion dated March 3, 1983 found that he was able to perform sedentary work. The district court affirmed, but on appeal to this court, we remanded because the Appeals Council had not considered evidence relating to pain. The Council, on remand, rather than refer the case back to the ALJ, referred the then current record to its medical advisor, who, after reviewing the record, opined that there was not sufficient objective evidence of physical disability to support a finding of disabling pain.[3] The Council agreed and denied Turner benefits on April 22, 1985. Turner appealed that third decision of the Appeals Council and the district court affirmed the Council's decision in October 1985. After another appeal by Turner to this court on March 20, 1986, we granted the Secretary's February 1986 motion to remand for consideration under mental impairment regulations which had

---

1. 42 U.S.C. §§ 416(i) and 423.

2. Neither can four siblings, who also went to school until age sixteen.

3. The Appeals Council denied Turner's request for a hearing on this evidence.

then recently been promulgated.[4]

The Appeals Council, in turn, remanded to another ALJ who conducted a hearing in June 1986. This ALJ found that, physically, Turner could perform sedentary work but that a combination of his physical and mental impairments prevented him from returning to his past relevant work or to perform other occupations considering his age, education and work background, and found him to be disabled within the meaning of the Act. The ALJ reported:

> The essential issue before the undersigned concerns the severity of the claimant's mental or emotional health problems. At the supplemental hearing held in June 1986, the claimant testified that he does not go anywhere, that he cannot even take a message, and that his problems severely upset him. He admitted to crying all the time secondary to depression, and reported becoming increasingly depressed over a period of five to six years. He complained of feeling worthless, of being unable to cope, and of being unable to handle anything. He reported that he had always had trouble concentrating and remembering, and ad-

mitted that he has thought of suicide as everyone would be better off without him. His wife testified that the claimant has been depressed for about five years and that he cannot cope with his condition. Their testimony at the most recent hearing was consistent with this testimony in October 1982, which indicated that the claimant cries, has contemplated suicide, and has difficulty tolerating his physical condition. Also, at the hearing in September 1980, the claimant, his wife, his mother, and other witnesses reported that his concentration and memory had been worsening in the preceding few months, that his nerves were bad, that he cried frequently, and that he had experienced personality changes as a result of his physical health problems.

The ALJ emphasized the otherwise paucity of evidence concerning Turner's mental condition but concluded that the evidence was sufficient to determine the existence of a severe mental impairment[5] since April of 1982. The Appeals Council again rejected the ALJ's finding. It characterized Turner's mental impairment as not having been established as being a significant psychiat-

**4.** 20 C.F.R. § 404, Subpart P, Appendix 1, promulgated pursuant to the Social Security Disability Benefits Reform Act of 1984.

His motion was based upon Pub.L. 98–460 § 5(c)(1), *reprinted in* 42 U.S.C. § 421 note (Supp.1988), which provides:

> Any initial determination that an individual is not under a disability by reason of a mental impairment and any determination that an individual is not under a disability by reason of a mental impairment in a reconsideration of or hearing on an initial disability determination, made or held under title II or XVI of the Social Security Act after the date of the enactment of this Act and prior to the date on which revised criteria are established by regulation in accordance with subsection (a) ... shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria.

The Act was enacted on October 9, 1984. The Secretary's final decision on Turner's claim was issued on April 22, 1985. The final regulations were published in the Federal Register on August 28, 1985. 50 Fed.Reg. 35038, 35066. Therefore, Turner's claim meets the time requirements of § 5(c)(1). Section 5(c)(1) requires also that, for a claimant to be eligible for

a redetermination of the merits of his claim based on the new regulations, the earlier determination must have been that he is not under a disability "by reason of a mental impairment." Although Turner's claim during the proceedings that culminated in the Appeals Council's April 22, 1985 decision was not based upon mental impairment, the Appeals Council did find that "[t]he claimant's impairments do not meet or equal any impairment in the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4." Since that listing included mental impairments, the Appeals Council's decision served as an adequate predicate for our order of March 20, 1986 remanding the case for readjudication based upon the new Mental Impairment Listings.

**5.** The ALJ evaluated Turner's mental impairment according to governing regulations and especially considered four areas of function as specified by the regulatory criteria—i.e., activities of daily living; social functioning; concentration, persistence and pace; and deterioration or decompensation in work or work-like settings. The rating for each of these four areas is compared with the criteria set forth in the regulations for determining the severity of the mental impairment.

ric impairment.[6] It concluded that Turner had maintained the ability to perform sedentary work from March 1, 1979 through December 31, 1983. The case, however, was again remanded by the Council to an ALJ for further orthopedic evaluation and psychological evaluation. The ALJ was instructed to consider the possibility of a disability for a period after December 31, 1983. Turner was afforded a complete consultative psychological evaluation in March 1987. WAIS[7] testing showed him to have a verbal IQ of 67, a performance IQ of 68, and a full-scale IQ of 67.

In a fourth determination by an ALJ (in April 1987), it was again found that Turner, as a consequence of his combined impairments, was disabled. The ALJ noted that it was limited by the terms of the remand from finding the existing disability prior to January 1, 1984 but recommended that (based on the results of the psychological testing) the Appeals Council reconsider its previous ruling that Turner was not disabled prior to December 31, 1983. The Appeals Council affirmed the ALJ's finding of disability after January 1, 1984, but declined to follow the recommendation that it reconsider a period of disability as existing prior to that date. The district court affirmed the Secretary's decision and Turner brings this appeal.

A claimant, of course, is determined to be disabled and entitled to disability benefits when his impairment meets or equals a listed impairment in Appendix 1 of the Secretary's regulations. 20 C.F.R. § 404.1520(d). At the time of our March 20, 1986 remand order, the listing of § 12.05(C) of Appendix 1 was as follows:[8]

12.05 *Mental Retardation ...*: Mental retardation refers to a significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age twenty-two).

The required level of severity for this disorder is met when the [following] requirement[ ] ... [is] satisfied.

C. A valid, verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Turner's IQ of 67 was first formally determined in 1987.

In *Branham v. Heckler*, 775 F.2d 1271 (4th Cir.1985), we considered the appeal of a claimant who had been physically injured in 1979. He underwent an IQ examination in 1982 which reflected an IQ of 63. Reversing a district court finding that disability from combined effects could only date from the time of the psychological examination, we held:

We think that there may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life. The fact that one was not earlier taken does not preclude a finding of earlier retardation. *Branham* at 1274.

Thus, while the regulation does not require a finding that Turner had an IQ between 60 and 69 prior to 1987, such a finding is not precluded.

We turn then to the application *vel non* of the regulation to the determination of Turner's claim for disability. First, there is no question that Turner's physical impairments impose "additional and significant work related limitation of function"[9]

---

6. Turner underwent a psychiatric evaluation in 1982. It consisted of a review of his medical records and an interview with him. The psychiatrist concluded that he was suffering from an emotional/mental condition but opined that the condition did not result from a primary psychiatric disease.

7. Wechsler Adult Intelligence Scale, a standardized test useful in establishing mental retardation, to which the quantitative requirements of the regulations (§ 12.05), *supra* n. 4, refer.

8. The regulations regarding mental disorders as an impairment expired on August 28, 1988, 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00 (1988), and were renewed without change, 53 Fed.Reg. 29878 (August 9, 1988).

9. See *Branham, supra* at 1273, where we said:
   The plaintiff correctly argues that the significant limitation under section 12.05(c) need not be disabling in and of itself. If the plaintiff's physical impairment were required to be independently disabling, section 12.05(c)

even without considering the yet inadequately addressed issue of pain. Also, we may assume that Turner had the same IQ (67) when he was injured in 1979 as he did when he was psychiatrically tested in 1987. *Branham, supra.* It is true that a psychiatrist in 1982 opined that Turner was not suffering a primary psychiatric disease. There was, however, no IQ test administered, and the psychiatrist's other findings were not inconsistent with mental retardation. The ALJ conducting the June 1986 hearing credited the testimony of both Turner and his wife as establishing a debilitating mental condition which demonstrably had existed for six years prior to that hearing. The most important evidence, however, bearing on the application of § 12.05 is the testimonial and documentary evidence throughout the record establishing that Turner was unable to read or write at age sixteen even after ten grades of schooling—a clear "manifestation" of mental retardation occurring before age twenty-two.

In view of the above, the judgment of the district court is reversed with instructions that it be remanded to the Secretary for entry of an order awarding benefits to Turner dating from March 1, 1979.

REVERSED AND REMANDED WITH INSTRUCTIONS.

would be rendered meaningless. Therefore, something less than a preclusion from any substantial gainful employment must apply. *Accord Kennedy v. Heckler,* 739 F.2d 168, 172 (4th Cir.1984) ("[T]he inquiry is whether the claimant suffers from any additional physical or mental impairment significantly limiting work-related functions.") ... [T]he fact that a claimant could not do his past relevant work alone established the other, significant work-related limitation of function required by the regulation.