# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1708

_____

| | | |
|---|---|---|
| Matthew Goose, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the District |
| Kenneth S. Apfel, Commissioner | * | of Minnesota |
| of Social Security | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: December 15, 2000
Filed: February 9, 2001

_____

Before McMILLIAN and MURPHY, Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

Matthew Goose seeks appellate review of the District Court's[2] order upholding the decision of the Commissioner of Social Security Administration (SSA) denying Goose's petition for disability benefits. Goose alleges the Administrative Law Judge

_____

[1]The Honorable Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

(ALJ) did not have substantial evidence to support his decision, that Goose met the listing of impairments under the Social Security Act (the Act), and that the hypothetical question posed to the vocational expert failed to include all the relevant impairments and limitations. We conclude that the ALJ did not err in his decision to deny benefits. Accordingly, we affirm.

## I.

Matthew Goose, a Native American, was born in 1972. He completed school through the tenth grade and has very little work experience. Goose has a history of substance abuse, criminal activity and mental disorders since the age of eleven. In 1995, Goose suffered a severe head injury as the result of an assault. Subsequent to the attack, Goose had heart valve replacement surgery in order to correct a congenital defect. On April 22, 1996, Goose applied for Supplemental Security Income (SSI) Disability Benefits, alleging he has been disabled since the June 9, 1995 assault.

Goose was denied SSI benefits by the ALJ on September 25, 1997. The ALJ found that Goose was not disabled under the act because he does not meet the listing requirements and that he retains residual functional capacity (RFC) to perform simple repetitive tasks involving one or two steps that do not require a great deal of supervision or contact with co-workers or the public. The ALJ based his opinion upon a hypothetical question posed by the vocational expert which included Goose's physical and mental limitations, but not his alleged inability to remain on task. The ALJ found little relevant evidence to support Goose's claim of inability to remain on task in work-like settings. The district court found that there was substantial evidence to support the decision of the ALJ. Goose raised additional arguments on appeal from new evidence which suggested he does meet the requirements under §§ 12.02 or 12.05. The district court found that there was substantial evidence on the record to support the findings of the ALJ.

2

## II.

We must affirm the decision of the ALJ if it is supported by substantial evidence in the record as a whole. Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion. Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir.1993).

The ALJ evaluated Goose according to the five-step process set forth in 20 C.F.R. 16.920. Step one was met since Goose had not engaged in any gainful employment since filing his application for benefits. Step two was met as the ALJ found that Goose had an organic mental disorder, personality disorder, substance addiction disorder, and a history of severe heart aliments. The ALJ concluded that Goose did not meet the listing requirements at step three. This finding is the basis for Goose's first claim for relief.

## A.

Goose asserts the ALJ erred when he found that Goose did not meet any two of the four requirements under § 12.02 Part (B). The four requirements are:
1. Marked restrictions of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Deficiencies of concentration, persistence and pace that result in frequent failure to complete tasks in a timely manner; or
4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

From the testimony before the ALJ, it is clear that Goose had no marked restrictions of daily activities. Goose continued his familiar pattern of hanging-out with

3

his friends and playing cards all day. Second, ample evidence was produced which demonstrated the Goose suffered little difficulty in maintaining social functioning. Goose testified he had little trouble getting along with others and he has routinely been described as "pleasant," and "cooperative."

The ALJ did find that Goose suffered difficulty in concentration, persistence and pace, but that difficulty was infrequent and he had demonstrated the ability to complete simple tasks such as making the bed, playing cards and performing odd jobs. Dr. Desmond's opinion fails to demonstrate the severity or frequency of Goose's failure to complete tasks. From this evidence, in addition to the other testimony, the ALJ properly concluded Goose did not meet the listing requirements. Further, Goose argues the letter submitted by Dr. Hoffman, which was never presented to the ALJ and reflected only a review of Goose's record, supports his argument that he meets § 12.02. Since there is ample evidence in the record that Goose possessed the ability to concentrate and complete tasks, the fact that this opinion differs in the conclusion is unpersuasive.

Lastly, Goose maintains that the ALJ erred in finding he did not meet the final listing requirement. It is important to note, that even if he could meet requirement 4, the fact that he has not met any one of the previous three listing requirements defeats his claim for compliance under § 12.02. However, the ALJ's conclusion that Goose did not meet this listing is supported by substantial evidence. Goose has never attempted to perform in a work or work-like setting and has deteriorated or decompensated. In fact, Goose admitted he has performed simple jobs and performed quite well at the evaluations of the Social Security Administration. The inability to sit through a movie as was repeatedly referred to in the arguments, says more for the quality of the film than it does for Goose's performance in the workplace.

**B.**

In the alternative, Goose's argues that he has an impairment equal to, or greater than, the § 12.05 listing requirement under 20 C.F.R. § 404. Specifically, Goose argues he has an equivalent IQ score below the threshold requirement of subparts B and/or C. The requirements are as follows:

B. A valid verbal, performance, or full scale IQ of 59 or less; or

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other impairment imposing additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix 1.

The threshold requirement for § 12.05 is mental retardation that has manifested itself before age 22. Goose was 22 years old at the time of the assault which resulted in his mental impairments. The ALJ did not consider Goose under § 12.05 as there was no proof that Goose was mentally retarded before age 22. There is no prior history of retardation and Goose scored a full scale IQ of 75, a borderline score. His score of 75 removes him from meeting either (B) or (C), but he urges that the individual index scores in specific areas of intelligence place him below the requirements. Essentially, Goose is arguing he has a medical equivalence of retardation.

This argument, although not raised to the ALJ, is based upon the concept that the Wechsler Memory Scale-Revised (WMS-R) scores would generally be commensurate with IQ scores, "all other things being equal." Goose asserted this position through the opinion of Dr. Hoffman who only reviewed the record developed by Dr. Desmond, Goose's examining physician. Dr. Hoffman opined in his letter that Goose had a severely impaired memory although his Wechsler Adult Intelligence Scale-Revised (WAIS-R) IQ scores were borderline. Dr. Hoffman stated it was "highly unlikely" that Goose would be able to understand and retain instruction or remain on task for

5

extended periods of time. He went on to state these limitations result in Goose being unemployable. One non-testifying, non-examining expert's opinion cannot be considered substantial evidence to defeat the decision of the ALJ which is supported by substantial evidence. Therefore, the ALJ's failure to address § 12.05 was not error and even if he had, Goose does not meet the requirements of the listing.

## III.

Lastly, Goose argues that the hypothetical question posed to the vocational expert was error as it did not include all Goose's alleged limitations. The testimony of a vocational expert is required when a claimant has satisfied his initial burden of showing that he is incapable of performing his past relevant work. Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir.1994). Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question. Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir.1996) When a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence. Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir.1994). Thus, the ALJ's hypothetical question must include those impairments that the ALJ finds are substantially supported by the record as a whole. See Stout v. Shalala, 988 F.2d 853, 855 (8th Cir.1993).

Goose's major claim of error is that the ALJ did not include in his question to the vocational expert the factor of a person who would routinely get frustrated and walk off the work site. An ALJ needs only to include the factors in his hypothetical question which are supported in the record. Prosch v. Apfel, 201 F.3d 1010, 1015 (8th Cir. 2000). The ALJ properly did not include this information as there was not compelling evidence to support this position.

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.